Whitney E. Street (CA Bar No. 223870)
**BLOCK & LEVITON LLP**
100 Pine Street, Suite 1250
San Francisco, CA 94111
Tel.: (415) 968-1852
Fax: (617) 507-6020
whitney@blockleviton.com

Jacob A. Walker (CA Bar No. 271217)
**BLOCK & LEVITON LLP**
260 Franklin St., Suite 1860
Boston, MA 02110
Tel.: (617) 398-5600
Fax: (617) 507-6020
jake@blockleviton.com

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SOUTHERN DIVISION

| | |
|---|---|
| NAWAF ALWAZZAN, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>STAAR SURGICAL COMPANY, CAREN L. MASON, DEBORAH ANDREWS, and PATRICK F. WILLIAMS,<br><br>        Defendants. | Case No. _____<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS; CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Nawaf Alwazzan, ("Plaintiff"), by and through his attorneys, alleges upon personal knowledge as to his own acts, and upon information and belief as to all other matters, based upon the investigation conducted by and through his attorneys, which included, among other things, a review of documents filed by Defendants (as defined below) with the United States Securities and Exchange Commission (the "SEC"), news reports, press releases issued by Defendants, and other publicly available documents, as follows:

## NATURE AND SUMMARY OF THE ACTION

1.     This is a federal securities class action on behalf of all investors who purchased or otherwise acquired STAAR Surgical Company ("STAAR" or the "Company") common stock between February 26, 2020 and August 10, 2020, inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5.

2.     STARR designs, develops, manufactures, and sells implantable lenses for the eye and companion delivery systems used to deliver the lenses into the eye. STAAR's primary products are: (1) "implantable Collamer® lenses," or "ICLs," used in refractive surgery; and (2) intraocular lenses, or "IOLs," used in cataract surgery.

3.     In violation of the Exchange Act, STAAR misled investors as to, *inter alia*, its sales in China. This has led to inflated financial results.

4.     Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts to investors. Specifically, Defendants misrepresented and/or failed to disclose to investors that the Company was overstating and/or mischaracterizing: (1) its sales and growth in China; (2) its marketing spend; (3) its research and development expenses; and that as a result of the foregoing, (4) Defendants' public statements were materially false and misleading at all relevant times.

5.     On August 5, 2020, after the markets closed, STAAR reported disappointing financial results, as detailed below. On this news, shares of STAAR common stock fell approximately 10%, down from the August 5, 2020 closing price of $61.81 to an August 6, 2020 close of $55.86.

6.     On August 11, 2020, analyst J Capital Research published a report in which it wrote that "[w]e think that STAAR Surgical has overstated sales in China by at least one-third, or $21.6 mln. That would mean that all of the company's $14 mln in 2019 profit is fake."[1] The report continued that "[f]ake sales [in China] come at 100% margins and therefore translate directly into profit. That means that the roughly $21.6 mln in overstated Chinese sales in 2019 represent 152% of total

---

[1] *See* https://www.jcapitalresearch.com/uploads/2/0/0/3/20032477/2020_08_11_staa.pdf (last visited on August 14, 2020).

3

company profit. In other words, without the fraud that we believe pervades the China business, STAAR is losing money."

7. J Capital Research stated in reaching its conclusions, it "conduct over 75 interviews, visited company sites in China and Switzerland, and reviewed financial statements and other government documents for STAAR's distributors and customers in China. We will show that sales of STAAR's ICLs are dramatically overstated."

8. On this news, the stock continued its descent, closing at just $48.25 per share on August 11, 2020.

9. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

10. The federal law claims asserted herein arise under and pursuant to §§ 10(b) and 20(a) of the Exchange Act, 15 U.S.C. § 78(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5.

11. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331, § 27 of the Exchange Act, 15 U.S.C. § 78aa.

12. This Court has jurisdiction over each Defendant named herein because each Defendant is an individual or corporation who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by

the District Court permissible under traditional notions of fair play and substantial justice.

13.    Venue is proper in this District pursuant to § 27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1931(b), as the Company has its principal executive offices located in this District and conducts substantial business here.

14.    In connection with the acts, omissions, conduct and other wrongs in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

15.    Plaintiff Nawaf Alwazzan, as set forth in his Certification filed contemporaneously herewith, acquired shares of STAAR common stock at artificially inflated prices, and has been damaged.

16.    Defendant STAAR Surgical Company is incorporated under the laws of the State of Delaware, with its principal place of business at 25651 Atlantic Ocean Drive, Lake Forest, CA 92630.  Its common stock trades on the NASDAQ stock exchange under the symbol STAA.

17.    Defendant Caren L. Mason is the President and Chief Executive Officer of STAAR. She has served on STAAR's Board of Directors since her

election at the Company's 2014 Annual Meeting, and has served as STAAR's CEO since March 1, 2015.

18.     Defendant Deborah Andrews was formerly STAAR's Chief Financial Officer, having served in that role from October 2, 2017 until her retirement in 2020. STAAR has indicated that Ms. Andrews remains in an advisory role with the Company at present.

19.     Defendant Patrick F. Williams was appointed as the CFO of STAAR in July 2020.

20.     Defendants Mason, Andrews, and Williams are named as Defendants for violations of all counts asserted herein, and are referred to as the "Individual Defendants." The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers, and the investing public, *i.e.*, the market. The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material, non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations that were being made were then

6

materially false and/or misleading.  The Individual Defendants are therefore liable for the misstatements and omissions plead herein.

## DEFENDANTS' FALSE AND MISLEADING STATEMENTS AND/OR OMISSIONS

21.     On February 26, 2020, the beginning of the Class Period, STAAR reported its financial results for the fourth quarter and fiscal year ended January 3, 2020 on Form 10-K with the SEC.[2] In the accompanying press release, STAAR reported full year "Record Net Sales of $150.2 Million," up 21% year-over-year, with ICL sales up 28% year-over-year, improved gross margins of 74.5% of sales compared to 73.8% of sales from the prior year, and full year net income of $0.30 per share, versus prior year net income of $0.11 per share.[3]

22.     In the Form 10-K, STAAR represented that "[o]ne customer, Shanghai Langsheng,[4] our China distributor who sells in to [sic] China and Hong Kong, accounted for more than 43% of our consolidated net sales during fiscal 2019. Net sales to Shanghai Langsheng during each of the last three fiscal years were as follows:

---

[2] https://www.sec.gov/ix?doc=/Archives/edgar/data/718937/000156459020006791/staa-10k_20200103.htm.

[3] https://www.sec.gov/Archives/edgar/data/718937/000156459020006783/staa-ex991_18.htm.

[4] It appears that the proper spelling of the distributor is "Lansheng," but "Langsheng" is used herein to be consistent with the Company's spelling of its Chinese distributor.

| Net Sales to Shanghai Langsheng | | |
|---|---|---|
| Fiscal Year | Net Sales ($, in thousands) | Net Sales as Percentage of Consolidated Net Sales |
| 2019 $ | 64,820 | 43.2% |
| 2018 $ | 46,070 | 37.2% |
| 2017 $ | 24,473 | 27.0% |

23.     Also in the Form 10-K, STAAR reported that its "[m]arketing and selling expenses for 2019 were $45.5 million, an increase of 17.9% when compared with $38.6 million for 2018," which 2018 expenses were an increase of 35.9% when compared with $28.4 million for 2017. STAAR attributed the 2019 "increase in marketing and selling expenses" as being "due to an increase in headcount and salary-related expenses including stock-based compensation and continuing investments in digital, consumer, and strategic marketing, and travel expenses." STAAR further stated that:

> We also enter into certain strategic cooperation agreements with customers in which, as consideration for certain commitments made by the customer, including minimum purchase commitments, we agree, among other things, to pay for marketing, educational training and general support of our products. The provisions in these arrangements allow for these payments to be made directly to the customer or payments can be made directly to a third party for distinct marketing, educational training and general support services provided to or on behalf of the customer by the third party. For payments we make to another party, or reimburse the customer for distinct marketing and support services, we recognize these payments as sales and marketing expense as incurred. These strategic cooperation agreements are generally for periods of 12 months or more with quarterly minimum purchase commitments.

24.     In the Form 10-K, STAAR also reported that incurred "Research and development" expenses for the 2019 fiscal year of $25.298 million, up approximately 14.8% from $22.028 million in the prior year. STAAR added that "[r]esearch and development expense consist [sic] primarily of compensation and related costs for personnel responsible for the research and development of new and existing products, the regulatory and clinical activities required to acquire and maintain product approvals globally and medical affairs expenses. These costs are expensed as incurred."

25.     In the accompanying press release, Defendant Mason stated, in relevant part:

> We closed 2019 with strong fourth quarter results leading to full year performance above our committed targets for ICL unit growth, total revenue growth, cash generation and earnings per share. STAAR entered 2020 with continued financial and operating momentum. We achieved progress on our clinical and regulatory strategic imperatives with a new CE Mark approval for use of our ICL as a supplemental lens and the first patient implant in our U.S. EVO clinical trial . . . . 27% ICL unit growth for the fourth quarter included Japan up 95%, China up 43%, Germany up 29%, Spain up 20%, India up 16% and the U.S. up 10% as compared to the prior year period. As with many other companies, we are assessing and managing through the potential impact of the coronavirus on our business in China and elsewhere. Our thoughts are with all those who have been or may become impacted globally by the coronavirus. We have been directly in touch with and have been working with our China customers. Our customers have experienced a mandated pause in procedures during the month of February and our ICL unit volume will be impacted in the first quarter. We currently expect a potential $5 million to $7 million delay in sales orders. The STAAR China team has been engaged in an extensive remote customer outreach program that includes digital training courses. For example, during the week of February 10th, STAAR China had more than 2,500 healthcare professionals

participate in online training. Attendees included roughly 500 ophthalmic surgeons, as well as nurses, examiners and ICL specialists. We understand that our customers are hopeful to resume robust clinical activities, including implantation of the EVO ICL family of lenses, in March. Excluding any potential full year impact from the coronavirus, at this time we are maintaining our full year sales outlook.

26.     Defendants Mason and Andrews signed certifications, pursuant to 18 U.S.C. § 1350, as adopted pursuant to § 906 of the Sarbanes-Oxley Act of 2002, certifying that STAAR's 2019 Annual Report, filed on Form 10-K with the SEC on February 26, 2020, "fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934, as amended," and that "[t]he information contained in the Report fairly presents, in all material aspects, the financial condition and results of operations of the Company as of and for the periods presented in the Report."

27.     In addition, Defendants Mason and Andrews both submitted signed certifications accompanying the 2019 Annual Report stating that "based on [their] knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report," and moreover, that "[b]ased on [their] knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of

operations and cash flows of the registration as of, and for, the periods presented in this report."

28.    On April 13, 2020, STAAR issued a press release on Form 8-K with the SEC entitled "STAAR Surgical Provides COVID-19 Business Update."[5] In this release, STAAR stated:

> STAAR expects total net sales for the first quarter ended April 3, 2020 to be approximately $34.9 million, up approximately 7% as compared to the prior year period. The Company estimates COVID-19 negatively impacted first quarter sales by approximately $4 million, less than previously estimated. Despite the pandemic's impact on business, first quarter ICL unit growth is expected to be up approximately 9% with strong performance in Japan, Korea, Canada, Germany and the rest of Asia Pacific countries not including China. China's growth was up 7% due to a strong January and ordering resuming in the final two weeks of the quarter. Implant rates in China were up significantly in the past two weeks.

29.    On May 6, 2020, STAAR reported its financial results for the first quarter of 2020 on Form 10-Q with the SEC.[6] In this 10-Q, STAAR stated that "[o]ne customer, the Company's distributor in China, accounted for 33% and 36% of net sales for the three months ended April 3, 2020, and March 29, 2019, respectively. As of April 3, 2020 and January 3, 2020, respectively, one customer, the Company's distributor in China, accounted for 48% and 43% of consolidated trade receivables." STAAR also reported that "ICL units increased 9% over the prior year quarter, including . . . growth in China of 7%."

---

[5] https://www.sec.gov/Archives/edgar/data/718937/000156459020016323/staa-ex991_9.htm.
[6] https://www.sec.gov/ix?doc=/Archives/edgar/data/718937/000156459020021932/staa-10q_20200403.htm.

30.    In this Form 10-Q, STAAR also reported a "marketing and selling" expense of $11.028 million for the quarter, up from $10.143 million in the prior year first quarter.

31.    Furthermore, in this Form 10-Q, STAAR reported a "research and development" expense of $6.898 million, up from $5.635 million in the prior year first quarter.

32.    In its accompany press release filed on Form 8-K with the SEC,[7] STAAR reported net sales of $35.2 million, up 8% from the prior year quarter, ICL sales of $29.3 million, up 6% from the prior year quarter, and stated that "[w]e started 2020 off with the highest ICL sales and unit growth experienced in the last five years for a January. In our major markets which remained open that trend continued into the middle of March. The large Asian markets, China, Japan, and South Korea are all growing well now."

33.    Defendants Mason and Andrews signed certifications, pursuant to 18 U.S.C. § 1350, as adopted pursuant to § 906 of the Sarbanes-Oxley Act of 2002, certifying that STAAR's 2020 first quarter financial report, filed on Form 10-Q with the SEC on May 6, 2020, "fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934, as amended," and that "[t]he information contained in the Report fairly presents, in all material aspects,

---

[7] https://www.sec.gov/Archives/edgar/data/718937/000156459020021915/staa-ex991_25.htm.

the financial condition and results of operations of the Company as of and for the periods presented in the Report."

34.     In addition, Defendants Mason and Andrews both submitted signed certifications accompanying the 202 first quarter financial report, stating that "based on [their] knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report," and moreover, that "[b]ased on [their] knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registration as of, and for, the periods presented in this report."

35.     Also on May 6, 2020, STAAR filed a Form S-3 Registration Statement with the SEC for a $200 million mixed shelf offering.[8]

36.     The statements in ¶¶ 21-34 were materially false and misleading and omitted to disclose material information. Specifically, Defendants misrepresented and/or failed to disclose to investors that the Company was overstating and/or mischaracterizing: (1) its sales and growth in China; (2) its marketing spend; (3) its research and development expenses; and that as a result of the foregoing, (4)

---

[8] https://www.sec.gov/Archives/edgar/data/718937/000156459020021987/staa-s3.htm.

Defendants' public statements were materially false and misleading at all relevant times.

37.     Defendants knew, or in reckless disregard for the truth should have known, that at the time the statements in ¶¶ 21-34 were made, they were false and/or misleading, and/or failed to disclose material information to investors.

### THE TRUTH BEGINS TO EMERGE

38.     On August 5, 2020, after the markets closed, STAAR reported its financial results for the second quarter ended July 3, 2020, filing a Form 10-Q and issuing a press release with the SEC. The Company reported net sales of $35.2 million (down 11% from the prior year quarter), and ICL sales of $30.7 million (down 11% from the prior year quarter). STAAR reported a net loss of $0.03 per share, versus net income of $0.08 per share in the prior year quarter.

39.     In this Form 10-Q, STAAR reported that "the Company's distributor in China, accounted for 53% and 43% of net sales for the three and six months ended July 3, 2020, respectively, and the same customer, accounted for 49% and 43% of net sales for the three and six months ended June 28, 2019, respectively. As of July 3, 2020 and January 3, 2020, respectively, one customer, the Company's distributor in China, accounted for 57% and 43% of consolidated trade receivables."

40.     On this news, the Company's price plummeted by approximately 10%, falling from its August 5, 2020 close of $61.81 per share to an August 6 close of $55.86 per share.

41.     Then, on August 11, 2020, analyst J Capital Research published a report in which it wrote that "[w]e think that STAAR Surgical has overstated sales in China by at least one-third, or $21.6 mln. That would mean that all of the company's $14 mln in 2019 profit is fake." The report continued that "[f]ake sales [in China] come at 100% margins and therefore translate directly into profit. That means that the roughly $21.6 mln in overstated Chinese sales in 2019 represent 152% of total company profit. In other words, without the fraud that we believe pervades the China business, STAAR is losing money."

42.     J Capital Research stated in reaching its conclusions that it "conduct over 75 interviews, visited company sites in China and Switzerland, and reviewed financial statements and other government documents for STAAR's distributors and customers in China. We will show that sales of STAAR's ICLs are dramatically overstated."

43.     The J Capital Research report continued that "STAAR has not said much to investors about its largest client, Aier. It has posted a public notice in some Aier clinics stating that Aier has been the largest ICL partner each year since 2015. We spoke to a dozen people familiar with STAAR's sales in China, and they agreed that the STAAR sales numbers assume that 65,000-75,000 lenses – half the

volume sold in China – were sold to Aier Eye Hospital Group . . . in 2019. But Aier's public financial statements indicate that its purchases from STAAR should be no more than 41,192 lenses, 43% fewer than our interviewees told us. Based on Aier's 2019 annual report and our interviews with Aier management, we estimate that Aier performed at most 20,596 ICL surgeries in 2019. . . . If all the surgeries involved two lenses, than STAAR sold at most 41,192 lenses to Aier in 2019, not the 65,000-75,000 that Langsheng and STAAR China told us. . . .  For 41,192 lenses, that would mean $20.2 mln in revenue to STAAR in 2019, not the $32.4 mln that would represent half of China revenues."

44.    J Capital Research further stated that "Aier has ample means to obfuscate its lens purchases. We learned in an interview with an Aier executive that the company has a subsidiary at a non-existent address in Tibet that is dedicated to processing purchases of STAAR lenses. This company, called Shannan Youshi . . . pays STAAR for lenses and takes payment from the Aier hospitals, with little scrutiny of accounts. . . . We asked a photographer to visit the premises, but the address does not exist. We telephoned the registered phone number, and it was a non-working number."

45.    J Capital Research further stated that "STAAR compensates for this sales inflation, we believe, with the marketing budget, which was $45.5 mln in 2019, 30% of sales. We spoke with sales and marketing executives in China, in the U.S., and in Europe as well as with former C Suite executive, and none could

identify promotional spending nearing $45.5 mln a year. These executives, including longtime regional sales directors, told us they estimate that the company spends no more than a couple million dollars on marketing. . . . Instead, according to a highly placed former executive, STAAR inflates sales and then balances the "income" by marking up marketing costs. According to a former executive, marketing 'subsidies' may be around one-third the stated value of the lens, so that the distributor buys the lens at $300 but STAAR books the sale at $450 and in order to hide the phantom revenue allocates the $150 to marketing. This means that STAAR is able to toggle sales at will using its marketing budget."

46.    J Capital Research continued that "[i]n May, we spoke with a Lansheng former who is in regular touch with former colleagues. This former executive estimated that Q1 sales were down 30% YoY in terms of volume and that Q2 would be more or less flat with Q2 2019." This was supported by a "current Lansheng employee" who J Capital Research wrote "estimated that Q1 sales had dropped by at least one-third." Moreover, the J Capital Research report provided that "[i]nquiries with Lansheng and STAAR employees indicated that Lansheng in H1 was carrying substantially less than its usually inventory because of concerns that the coronavirus would make the lenses unsaleable. A Lansheng former also said that STAAR was worried that receivables could go unpaid."

47.    The J Capital Research report further detailed "[m]issing exports from Switzerland," noting that "Swiss records showing exports of implantable contact lenses to China indicate sales far lower than those claimed by STAAR."

48.    J Capital Research continued that "STAAR may be producing fewer lenses than it claims" and that "[i]nventories have actually declined over five years despite a 95% increase in income." "STAAR formers have told us that they have not seen the increase in manufacturing activity that would support the reported 41% sales growth. No one, including former managers who worked within STAAR's manufacturing facility in Monrovia, can say what the unit production volume is."

49.    Moreover, the J Capital Research report noted that while "Asia was gut punched by Covid-19 . . . STAAR reported growth. As usual, the company relied on China for the bit of good news it had to offer. In Q2 [2020], China distributor Lansheng accounted for 53% of sales and 57% of trade receivables. For the first half [of 2020], STAAR said that Chinese unit sales rose by 7% and revenue declined by 2.7%, suggesting sharp discounts. In fact, several eye clinics told us that they were discounting ICL surgery, usually by about 15%. But we interviewed 19 doctors, distributors, and marketing platforms that promote eye surgery. They said that the number of ICL procedures in China from January through June had declined by around 50-60%. Chinese clinics were closed for at least two months, sometimes more." Indeed, "Langsheng represents 100% of

[STAAR's] sales in China. If both sales and inventory were down, it is impossible that China sales grew."

50.     Langsheng is STAAR's distributor and 100% of STAAR's China sales are attributable to Langsheng. According to J Capital Research, Langsheng's Chairman, Zhang Jian, bought the medical-equipment piece of a state-owned enterprise in 2008, at which time STAAR had just entered the Chinese market. J Capital Research further reported that "[i]n Q4 2015, STAAR gave up doing direct sales and handed import and distribution to Langsheng."

51.     On Langsheng, J Capital Research's report continued: "[s]hortly after signing with STAAR, Zhang Jian spirited the STAAR distribution business into a separate company registered in the British Virgin Islands. He used that BVI, called Visiontec, to establish a Shanghai shadow company whose English nae is the same as Langsheng's. Although the two Langshengs are owned by the same person, they are not the same company, but STAAR has never made a new disclosure."

52.     On this news, STAAR's stock price plummeted again, closing at $48.25 on August 11, 2020, down approximately 6.2% from its August 10, 2020 closing price of $51.42.

53.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of STAAR's common stock, Plaintiff and other members of the Class have suffered significant losses and damages.

**CLASS ACTION ALLEGATIONS**

54.    Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a class of all persons and entities who purchased or otherwise acquired STAAR common stock between February 26, 2020 and August 10, 2020, inclusive, seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5. Excluded from the Class are Defendants, directors and officers of the Company, as well as their families and affiliates.

55.    The members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.

56.    There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

a.  Whether the Exchange Act was violated by Defendants;

b.  Whether Defendants omitted and/or misrepresented material facts;

c.  Whether Defendants' statements omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

d.  Whether Defendants knew or recklessly disregarded that their statements were false and misleading;

e.  Whether the price of the Company's stock was artificially inflated; and

f.  The extent of damage sustained by Class members and the appropriate measure of damages.

57.   Plaintiff's claims are typical of those of the Class because Plaintiff and the Class sustained damages from Defendants' wrongful conduct alleged herein.

58.   Plaintiff will adequately protect the interests of the Class and have retained counsel who are experienced in class action securities litigation. Plaintiff has no interests that conflict with those of the Class.

59.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

**FRAUD ON THE MARKET**

60.   Plaintiff will rely upon the presumption of reliance established by the fraud-on- the-market doctrine that, among other things:

a. Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

b. The omissions and misrepresentations were material;

c. The Company's common stock traded in efficient markets;

d. The misrepresentations alleged herein would tend to induce a reasonable investor to misjudge the value of the Company's common stock; and

e. Plaintiff and other members of the class purchased the Company's common stock between the time Defendants misrepresented or failed to disclose material facts.

61. At all relevant times, the markets for the Company's stock were efficient for the following reasons, among others: (i) the Company filed periodic public reports with the SEC; and (ii) the Company regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the major news wire services and through other wide-ranging public disclosures such as communications with the financial press, securities analysts, and other similar reporting services. Plaintiff and the Class relied on the price of the Company's common stock, which reflected all information in the market, including the misstatements by Defendants.

**NO SAFE HARBOR**

62.     The statutory safe harbor provided for forward-looking statements under certain conditions does not apply to any of the allegedly false statements pleaded in this Complaint. The specific statements pleaded herein were not identified as forward-looking statements when made.

63.     To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.

**SCIENTER ALLEGATIONS**

64.     As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding STAAR, their control over, and/or receipt and/or modification of STAAR's allegedly materially misleading misstatements and/or their associations with the Company

which made them privy to confidential proprietary information concerning STAAR, participated in the fraudulent scheme alleged herein.

## LOSS CAUSATION

65.    On August 5, 2020, after the markets closed, STAAR reported its second quarter 2020 financial results. On this news, STAAR common stock fell approximately 10%, from its August 5, 2020 close of $61.81 per share to an August 6, 2020 close of $55.86 per share.

66.    On August 11, 2020, analyst J Capital Research issued its highly critical research report, as alleged above. On this news, STAAR common stock plummeted from an August 10, 2020 closing price of $51.42 per share to close at $48.25 on August 11, 2020, a one day drop of approximately 6.2%.

## CAUSES OF ACTION

### <u>COUNT ONE</u>
**Violations of § 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder**

67.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

68.    During the Class Period, Defendants disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose the material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading.

69.    Defendants violated § 10(b) of the Exchange Act and Rule 10b-5 in that they: (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon those who purchased or otherwise acquired the Company's securities during the class period.

70.    Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for the Company's common stock. Plaintiff and the Class would not have purchased the Company's common stock at the price paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by Defendants' misleading statements.

**COUNT TWO**
**Violations of § 20(a) of the Exchange Act**
**(Against the Individual Defendants)**

71.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

72.    The Individual Defendants acted as controlling persons of the Company within the meaning of § 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions at the Company, the Individual Defendants had the power and authority to cause or prevent the Company from engaging in the wrongful conduct complained of herein. The Individual Defendants were provided

with or had unlimited access to the documents described above which contained statements alleged by Plaintiff to be false or misleading both prior to and immediately after their publication, and had the ability to prevent the issuance of those materials or to cause them to be corrected so as not to be misleading.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment as follows:

a)  determining that this action is a proper class action pursuant to Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the Class as defined herein, and a certification of Plaintiff as class representative pursuant to Rule 23 of the Federal Rules of Civil Procedure and appointment of Plaintiff's counsel as Lead Counsel;

b)  awarding compensatory and punitive damages in favor of Plaintiff and the other class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including pre-judgment and post-judgment interest thereon.

c)  awarding Plaintiff and other members of the Class their costs and expenses in this litigation, including reasonable attorneys' fees and experts' fees and other costs and disbursements; and

d)  awarding Plaintiff and the other Class members such other relief as this Court may deem just and proper.

1

## **DEMAND FOR JURY TRIAL**

2

Plaintiff hereby demands a trial by jury in this action of all issues so triable.

3

4

Dated: August 19, 2020                    Respectfully submitted,

5

6
                                          By: */s/ Jacob A. Walker*
                                          Jacob A. Walker (CA Bar No. 271217)

7

8                                         **BLOCK & LEVITON LLP**
                                          260 Franklin St., Suite 1860
9                                         Boston, MA 02110
                                          Tel.: (617) 398-5600
10                                        Fax: (617) 507-6020
                                          jake@blockleviton.com
11

12                                        Whitney E. Street (CA Bar No. 223870)

13                                        **BLOCK & LEVITON LLP**
                                          100 Pine Street, Suite 1250
14                                        San Francisco, CA 94111
                                          Tel.: (415) 968-1852
15                                        Fax: (617) 507-6020
                                          whitney@blockleviton.com
16

17

18                                        *Counsel for Plaintiff*

19

20

21

22

23

24

25

26

27

28